IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:11CV191-RLV
(5:08CR10-RLV-DSC-6)

| | |
|---|---|
| RUBEN SANCHEZ-GUZMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on pro se Petitioner Ruben Sanchez Guzman's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Motion for Summary Judgment, (Doc. No. 9), and on Petitioner's Motions to Amend/Correct the § 2255 petition, (Doc. Nos. 4; 11).

**I.     BACKGROUND**

On February 27, 2008, the Grand Jury for the Western District of North Carolina returned a six-count Bill of Indictment, charging Petitioner Ruben Sanchez-Guzman in Count One with participating in a conspiracy to possess with intent to distribute at least 5 kilograms of cocaine and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A).  See (Case No. 5:08-cr-10-RLV-6, Doc. No. 21: Indictment).  Petitioner's case was tried before a jury on November 4-7, 2008, and the jury found Petitioner guilty of the conspiracy charge.  The jury also found that Petitioner was responsible for between 500 grams and 5 kilograms of cocaine and for less than 50 grams of methamphetamine.  See (Id., Doc. No. 141: Jury Verdict).

1

On August 11, 2009, the Court entered its judgment sentencing Petitioner to 168 months' imprisonment, the bottom of the advisory sentencing guideline range. See (Id., Doc. No. 196: Judgment). The Fourth Circuit affirmed the conviction and sentence in an unpublished decision, and the Supreme Court denied Petitioner's petition for writ of certiorari on January 10, 2011. See United States v. Sanchez-Guzman, 395 F. App'x 8 (4th Cir. 2010), cert. denied, 131 S. Ct. 955 (2011).

Petitioner placed the § 2255 petition in the prison mail system on December 20, 2011, and it was stamp-filed in this Court on December 30, 2011. Petitioner contends that attorney Daniel Baker McIntyre III, who represented Petitioner in his trial and the direct appeal, provided constitutionally ineffective assistance of counsel. Specifically, Petitioner contends that counsel cited the wrong law concerning FED. R. EVID. 403 and 404(b) in arguing that the Government should not have been allowed to present certain evidence to the jury related to Petitioner's possession of firearms. Petitioner contends that counsel's ineffectiveness proved fatal to Petitioner's pre-trial motions in limine. See (Doc. No. 1 at 13).

On May 29, 2012, this Court entered an Order requiring the Government to respond to the motion to vacate. On June 11, 2012, Petitioner filed a motion to amend the motion to vacate "for retroactive application of new rule created by" the Supreme Court in DePierre v. United States, 131 S. Ct. 2225 (2011). (Doc. No. 4). On July 26, 2012, the Government filed the pending summary judgment motion. (Doc. No. 9). On July 26, 2013, Petitioner filed a motion to amend the motion to vacate "for retroactive application of" the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 2013). (Doc. No. 11). On November 12, 2013, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court advised Petitioner of his right to respond to Respondent's motion. On November 25, 2013, Petitioner

2

responded to the summary judgment motion.

## A. Relevant Pretrial Proceedings

Before Petitioner's trial, the Government gave pretrial notice of its intention to introduce evidence at trial concerning Petitioner's possession of firearms during the course of the charged narcotics conspiracy. See (Criminal Case No. 5:08cr10-RLV-DSC-6, Doc. Nos. 110; 111; 119). Although this notice was styled a "Notice of Intent to Introduce 404(b) Evidence at Trial," the Government stated that it believed the evidence was "part of the conspiracy and inextricably intertwined with the crimes charged in Count One and therefore not subject to the strictures of Rule 404(b)," but that it was also giving notice under Rule 404(b) to the extent that this was deemed to be evidence of "other crimes, wrongs, or acts." See (Id., Doc. No. 110 at 2). The evidence related to Petitioner's arrest in Forsyth County, North Carolina, on January 27, 2008, after he possessed and brandished a 9 mm pistol and admitted to a sheriff's deputy that the pistol belonged to him.[1] See (Id., Doc. No. 110). The Government also apparently disclosed to defense counsel its intention to introduce evidence involving photographs, posted on a co-conspirator's MySpace website, showing Petitioner and several of his co-conspirators holding firearms.

In response to the notices provided by the Government, counsel McIntyre filed motions in limine, seeking to exclude the evidence regarding the photographs and the arrest and pistol seizure in Forsyth County. (Id., Doc. Nos. 130; 131). In each of his motions, counsel McIntyre cited Rules 402 and 403 of the Federal Rules of Evidence and argued that the probative value of

---

[1] After his trial in this Court, but before sentencing, Petitioner pled guilty in the Middle District of North Carolina to possession of a firearm by a prohibited person based on the Forsyth County arrest. See (Criminal Case No. 5:08cr10-RLV-DSC-6, Doc. 190 at ¶ 35: Presentence Investigation Report).

3

such evidence was substantially outweighed by the danger of unfair prejudice or of misleading the jury. See (Id., Doc. No. 130 at 1; Doc. No. 131 at 1). The Government filed a consolidated response to the two motions, arguing that the evidence was relevant under Rule 402, and was not unduly prejudicial under Rule 403. See (Id., Doc. No. 132). On November 3, 2008, at the conclusion of an evidentiary hearing on a motion to suppress filed by co-defendant Yonel Astello-Posada, the Court conducted a hearing on Petitioner's motions in limine. See (Id., Doc. No. 213). After the prosecutor provided copies of the MySpace photographs for the Court's examination and made her arguments concerning the admissibility of the photographs, counsel McIntyre argued that Petitioner was not charged in this case with using or carrying a firearm during a narcotics offense under 18 U.S.C. § 924(c), and these photographs were not relevant to proving any element of the charged conspiracy. (Id. at 73-76; 77). He also argued that none of the discovery he had seen indicated that anyone was going to testify that Petitioner had carried a firearm as part of the conspiracy, and the guns shown in the photographs were irrelevant. (Id. at 78). The prosecutor responded that the case law (as cited in the Government's opposition to the motions in limine) was clear that evidence of guns could be admissible in a drug conspiracy case. (Id. at 79).

Counsel McIntyre also argued against the admission of the evidence concerning the possession of the pistol in Forsyth County, contending that the firearm had nothing to do with the elements of the charged conspiracy, and that the alleged offense took place in the Middle District of North Carolina and had nothing to do with the Western District. (Id. at 82-83). The Government responded that case law showed that the courts have routinely admitted this type of evidence, and cited several cases to that effect. (Id. at 83-84). Counsel McIntyre, in turn, cited several cases and discussed their facts and applicability to the instant matter. (Id. at 84). The

4

Court denied the motions in limine. (Id. at 87). The Court found "that the nexus between guns and drugs is well established and it has to do with drug activities being protected through the possession of drugs." (Id.). The Court found the evidence "quite relevant," based on the case law, and, particularly addressing the Forsyth County pistol possession, the Court noted that the action was timely because it occurred during the period of the alleged drug conspiracy. (Id.).

**B. The Trial Evidence**

**1. The Narcotics Conspiracy**

The evidence at Petitioner's trial showed that, early in the investigation, officers arrested Scott Foster, who agreed to cooperate by recording telephone calls and face-to-face conversations with his suppliers: Petitioner and co-defendant Posada. See (Id., Doc. No. 215 at 24-25; Doc. No. 217 at 21). Over the course of three weeks in January 2008, Foster used federal money to pay Posada and Petitioner a $20,000 drug debt. See (Id., Doc. No. 215 at 26-27). On four separate dates in January 2008, Petitioner and Posada went to Foster's business to collect some of the debt. (Id.). The jury heard the audio recording of each of these meetings. See (Id., Doc. No. 216 at 198-218).

Foster explained that he first started buying drugs from Petitioner in June 2007. See (Id., Doc. No. 216 at 169-70; Doc. 217 at 15-16; 32-33). Foster purchased between 6 and 9 ounces of cocaine from Petitioner on at least five occasions, and up to 35 pounds of marijuana over the course of numerous purchases. See (Id., Doc. No. 216 at 171). When Posada returned to the United States from Mexico, Foster would call Petitioner if he wanted to speak to Posada about buying drugs. See (Id., Doc. No. 216 at 270-71; Doc. No. 217 at 48-49). Foster additionally testified that he purchased methamphetamine from Petitioner after Posada returned from Mexico. See (Id., Doc. No. 216 at 188-89; Doc. No. 217 at 24). Foster then described how he once

5

followed Petitioner to a stash house near Winston-Salem where he received a half kilogram of cocaine.  See (Id., Doc. No. 216 at 194-95).

Law enforcement officers subsequently obtained consent to search the Winston-Salem stash house.  See (Id., Doc. No. 215 at 31-47).  An SBI agent explained that one room had cocaine residue all over the floor, two hydraulic presses for packing cocaine, imprints for stamping a distinctive clover on the pressed cocaine, and hundreds of baggies and wrappers.  See (Id. at 33-37).  Officers found 18 pounds of marijuana in a suitcase in an upstairs bedroom, see id. at 36, and a cooler containing 22 pounds of methamphetamine in the backyard.  See (Id. at 36; 39-41).

### 2. The Evidence Regarding Firearms

During Petitioner's trial, a deputy from the Forsyth County Sheriff's Office testified about an altercation outside a Winston-Salem nightclub on January 27, 2008, and said that an individual claimed that Petitioner had "hit him in the face and pointed a gun at him."  See (Id., Doc. No. 217 at 135).  The deputy explained that a 9 millimeter handgun was located in the bed of a truck adjacent to Petitioner's car.  See (Id. at 136-37).  Petitioner then admitted to the deputy that "it was his gun and he [had] placed it on the back of the truck."  (See id. at 137).  Another deputy testified that Petitioner's gun was loaded.  (See id. at 138).  When officers came to arrest Petitioner on January 30, 2008, he told them he was unarmed because "Winston-Salem had his gun."  (Id. at 80).  The Government presented several photos of Petitioner and his coconspirators possessing firearms.  See (Id., Doc. No. 216 at 21-22 (regarding Gov. Exs. 85; 87-88; 105).  Additionally, co-conspirator Yonel Astelo-Pasado testified that the pistol in Petitioner's right hand in Gov. Ex. 85 was "the one he got caught with in Winston-Salem."  See (Id., Doc. No. 217 at 258).  Posada further testified that although Petitioner carried that gun, he did not carry it with him "that much."  (Id.).

6

Additionally, Foster testified that he delivered a .22 magnum and a .25 caliber pistol to Posada and Petitioner during the time period of the conspiracy.  See (Id., Doc. No. 216 at 222). Though Foster specifically remembered handing the .22 caliber handgun to Posada, he was "pretty sure," but not certain, that he gave the .25 caliber handgun to Petitioner.  See (Id. at 222-23).

**C. The Direct Appeal**

In the direct appeal, counsel McIntyre raised three arguments on Petitioner's behalf: 1) the trial court abused its discretion in admitting the MySpace photographs in violation of Rule 403; 2) the trial court abused its discretion in admitting the evidence of Petitioner's possessing the pistol in Forsyth County, in violation of Rule 403; and 3) the trial court erred by enhancing the sentence by two levels pursuant to U.S.S.G. § 2D1.1 for possessing a firearm.  See (Doc. No. 8-1: Appellant's Brief).  Regarding the introduction of the photographs, McIntyre argued that the evidence was irrelevant under Rule 402 and unduly prejudicial under Rule 403.  (Id. at 13-14). He developed at some length his argument that the evidence was likely to inflame the jury and had little relevance, and that the association between guns and drugs was not so automatic that the presence of one presupposed the other.  (Id. at 14-17).  He concluded that "the photographs had marginal if any probative value and a high potential to persuade the jury to decide the case on emotion rather than evidence," and this Court thus abused its discretion in admitting them. (Id. at 17).  McIntyre made a similar argument, citing the same legal authorities, regarding the admission of the evidence related to the Forsyth County incident.  (Id. at 17-19).

The Fourth Circuit affirmed Petitioner's conviction and sentence, specifically rejecting the evidentiary arguments and concluding that this Court "did not abuse its discretion by finding the firearm evidence at issue relevant and that its probative value was not substantially

outweighed by the danger of unfair prejudice." United States v. Sanchez-Guzman, 395 F. App'x at 9.

## II. STANDARD OF REVIEW

### A. Section 2255

Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the Court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing § 2255 Proceedings. After having considered the record in this matter, including the parties' summary judgment materials, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## III. DISCUSSION

### A. Petitioner's Motions to Amend the § 2255 Motion to Vacate

The Court first addresses Petitioner's motions to amend his § 2255 motion to vacate to raise claims under the Supreme Court's decisions in DePierre and Alleyne. Petitioner's motions to amend will be denied. The amendment of a motion filed under § 2255 is governed by Rule 15 of the Federal Rules of Civil Procedure. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Here, Petitioner filed his motions to amend more than one year after his judgment became final. Thus, Petitioner's motions to amend are untimely under the one-year statute of limitations set forth in § 2255(f). An otherwise untimely amendment, however, may relate back to the date of the original § 2255 motion if the newly asserted claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED R. CIV. P. 15(c)(2). In order for this Court to find that an otherwise untimely claim relates back, the proposed amended claim must arise from the "same core facts," and the claim may not be dependent on events that are separate both in time and in the substance of the facts upon which the original claims depended. See Mayle v. Felix, 545 U.S. 644, 655-57 (2005). Here, Petitioner's proposed amended claims do not arise out of the "same core facts" as asserted in his original petition.

Section 2255(f)(3) provides an exception to the one-year statute of limitations for claims based on a right "newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." A claim based on either DePierre or Alleyne does not qualify under this exception. See Simpson v. United States, No. 13-2373, 2013 WL 3455876, at *1 (7th Cir. July 10, 2013). That is, the Supreme Court has not held that either DePierre or Alleyne is retroactively applicable to cases on collateral review.

In sum, Petitioner's motions to amend are denied.

**B. Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced Petitioner. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

In support of his ineffective assistance of counsel claim, Petitioner argues that counsel McIntyre "used the wrong interpretative law concerning Fed. R. Evid. 403 and 404(b), whereas [Petitioner] had never been made to be a prior felon," and that McIntyre "continu[ed] with such erroneous argument of law on direct appeal all the way to the Supreme Court[.]" See (Doc. No. 1 at 13). Petitioner contends that Rule 403 and Rule 404(b) were the correct "interpretative law" that should have been applied here, and correctly sets forth the language and the hornbook legal principles of these rules, see id. at 14-16.

Petitioner's ineffective assistance of counsel claim is without merit.  Counsel argued during the oral argument before this Court in the motions in limine, and once again on Petitioner's direct appeal, that the firearm evidence was unduly prejudicial and had little relevance and probative value as to the charged conspiracy.  In sum, counsel asserted the very legal argument that Petitioner contends counsel should have asserted, so it is difficult to discern the allegedly deficient performance.  Petitioner appears to take issue with the fact that counsel cited to the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), in arguing that the firearm evidence was prejudicial and should have been introduced at trial.  Petitioner appears to be complaining that Old Chief involved the introduction of a defendant's prior felony conviction into evidence.  Petitioner appears to contend that because the evidence introduced at his trial was mere possession of a firearm and not the fact of a prior felony conviction, counsel therefore should not have cited to Old Chief for support.  Counsel merely cited to Old Chief, however, for the general proposition that the key inquiry in determining whether an item of evidence is inadmissible under Federal Rule of Evidence 403 is whether the evidence is likely to lure the jury to decide the case on an improper, usually emotional, basis.  Here, Petitioner simply fails to show that counsel rendered deficient performance related to his attempt to have this Court suppress the firearms evidence in Petitioner's trial.  Indeed, in challenging the firearms evidence, counsel performed exactly as any competent attorney would.  In sum, Petitioner's ineffective assistance of counsel claim is without merit.

IV.   **CONCLUSION**

For the reasons stated herein, the Court will deny Petitioner's motions to amend the § 2255 petition, deny and dismiss the § 2255 petition, and grant Respondent's motion for summary judgment.

11

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 Motion to Vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**.

3. Petitioner's Motions to Amend the § 2255 Motion to Vacate, (Doc. Nos. 4; 11), are both **DENIED**.

4. Pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: January 3, 2014

Richard L. Voorhees
United States District Judge